RULE to show cause wherefore the sale of the plaintiff's lands by the sheriff on several writs of levari facias at the suit of the bank against him should not be set aside. The several parcels and tracts of land sold were included in four several mortgages from the plaintiff and his wife to the bank, and were grouped together and designated and described in the respective levies and advertisements of the sales on the four several writs of levari facias in the language in which they were designated in the respective mortgages on which the writs were issued, and *Page 121 
the ground for setting aside the sale alleged in the affidavit was that they sold at the sale for a grossly inadequate price, for the following among other reasons: that much of it was sold in mass whereas it should have been sold in separate allotments, which was not only practicable but quite convenient with reference to several portions of them, namely two pasture lots in the town of Smyrna, adjoining each other, containing two acres each, and sold together for one hundred and forty-nine dollars per acre, but were worth each of them separately at least two hundred and twenty-five dollars per acre, and would have sold separately for that much. They were divided from each other by a good post and rail fence. "The John M. Denning Lot," described and sold as one lot on Main Street in the same town, fronts on that and another street, consists of seven tenement houses rented to as many families, each house and curtelage separated from the one adjoining by a substantial fence and entirely independent of each other. "The One Acre Griffith Lot" on the same street, and advertised and sold as one lot, consists of four lots and four two-story comfortable dwelling-houses suitable for four respectable families, and each has a small garden attached, and the lots are separated from each other by good substantial board or pale fences between them. They are rented for three hundred dollars per annum, and are well worth three thousand dollars, but were sold en masse for one thousand seven hundred and fifty dollars. "The James L. Bewley Lot" sold as one but is in fact two lots, each having a brick storehouse on it and rented to two separate merchants, and are separate and distinct in their interior structure from the garrets to the cellars, and their only connection is that they adjoin each other. While these lots were selling the plaintiff requested the counsel in the writ for the bank who was present conducting the sale to sell them separately but he declined and said they were together in the mortgage and had to be sold together under it. They sold for four thousand two hundred dollars, but were worth at least six thousand dollars. "The Delaware Street Lot," described and sold as one lot and premises, consist of three lots, three dwelling-houses rented and occupied by three families, of which one rents for one hundred and eighty dollars and each of *Page 122 
the others for one hundred and ten dollars per annum. They sold together for two thousand six hundred and seventy-five dollars, but were worth at least five thousand dollars. They are good brick houses with pressed brick fronts and eligibly located, but are subjected to an annual ground-rent of thirty dollars. The house and lot on Main Street described in the advertisement as occupied by the defendant in the writ sold for three thousand five hundred dollars, but cost seven thousand dollars, and he was offered for it in 1874 six thousand dollars. The lots with the seven tenements on Main Street sold for one thousand eight hundred dollars, but were worth two thousand five hundred dollars; the two pasture lots for five hundred and seventy-six dollars, but were worth nine hundred dollars; that the farm sold for ten thousand two hundred dollars, but had paid for several years and up to the present year the interest on thirty thousand dollars; and that the description of the lands in the advertisement was very defective, etc.
Fulton, for the plaintiff in the rule, proposed to cite adjudged cases in the courts of Pennsylvania and New Jersey that a sale of lands sold in such a manner by a sheriff in either of those States would be unhesitatingly set aside by their courts.
But the Court declined to hear them read, and remarked that the practice had been well settled for fifty years and more, and had been repeatedly and uniformly recognized in the courts of this State, for the sheriff when selling lands on a mortgage or on mortgages, as in this case, to follow the description of them contained in the mortgage in his levy and advertisement of the sale of them.
Massey, for the defendant in rule, then observed that such he had always understood to be the practice in such cases in this State. That the grouping and descriptions of the lands as contained in the respective mortgages had been supplied by the mortgagor himself preparatory to the drawing of them; but if timely application had been made by him or his counsel to the *Page 123 
bank or its counsel for that purpose, they would have cheerfully consented to have had the property advertised and sold in just such separate parcels and allotments as might have been most agreeable to his wishes and interests in the matter. But nothing of the kind was even suggested until the day of the sale and after it had commenced, and then only with reference to the sale of the two brick stores.
 The rule discharged.